FD-302 (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription  10/20/2003

Corey Manley, born July 10, 1971, Social Security Account Number 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, was arrested at 12:58 p.m. by a combined Federal and State team of law enforcement officers after the execution of a Federal search warrant at his residence earlier in the day. The arrest was made without incident. Following his arrest, Manley was transported to the Honolulu Federal Bureau of Investigation (FBI) Office by Honolulu Police Department (HPD) Officers. At approximately 1:25 p.m., Manley was fingerprinted and photographed.

At approximately 2:06 p.m., Manley was interviewed by FBI SA Daniel K. Brady, HPD Deputized Officer Kevin Nakano. Manley was advised of the identity of the interviewing officers and then advised of his rights using a written Advise of Rights form. Manley was advised of the recent indictment and nature of the charges against him. Manley was advised of the strength and scope of the wiretap investigation which led to his indictment. Manley was advised of the nature of the mandatory minimum sentence which he faced. Manley was urged to cooperate with the investigation by answering questions. Manley was advised that such immediate cooperation could lead to a downward departure from the mandatory minimum sentence with the qualification that no departure could be promised by any investigator since such departures were in the sole discretion of the court.

Manley then executed a written waiver of his rights at approximately 2:18 p.m. which has been attached to this FD-302. Manley appeared to be in full control of his motor skills, his eyes were clear and steady and he spoke with a clear voice.

Manley advised that he has known Will Totten for many years and knows that Totten is presently an ice trafficker. Manley knew this because Totten has all the toys such as big trucks. Because Manley wanted money, Manley devised a scheme wherein Manley took $1800 from Eddy LNU on the promise that he would obtain an ounce of ice. Manley, however, did not intend to actually complete an ice transaction. Because Manley is not afraid of Eddy, Manley wanted to take his money. To further the scheme, when Manley was with Eddy, Manley actually called Totten to discuss this ice

---

Investigation on  10/17/2003  at  Honolulu, Hawaii

File #  245E-HN-17087                                   Date dictated  Not Dictated

by  FBI SA Daniel K. Brady and
    HPD Officer Kevin Nakano          EXHIBIT C-1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

0000000093

FD-302a (Rev. 10-6-95)

245E-HN-17087

Continuation of FD-302 of ___Corey Manley_____ , On 10/17/2003 , Page  2

transaction. Totten did not know of Manley's lack of true intentions to do ice transactions.

    Manley was confronted with the several other pertinent conversations discussing ice transactions. Manley advised that all these conversations were the same or similar schemes. Manley would later tell Eddy that Will kept the money to deflect the blame.

    Manley was afforded the opportunity to add anything else and he declined. Following this interview, Manley was escorted to the United States Marshals.

EXHIBIT C.2

0000000094

```
                                                                     1

 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3

 4    UNITED STATES OF AMERICA,      ) CRIMINAL NO. 03-00495DAE
                                     )
 5                Plaintiff,         )
                                     )
 6        vs.                        )
                                     )
 7    (07) COREY MANLEY,             )
                                     )
 8                Defendant.         )
      _____ )
 9

10                 TRANSCRIPT OF PROCEEDINGS

11        The above-entitled matter came on for hearing on

12   Monday, August 23, 2004, at 9:20 a.m., at Honolulu, Hawaii,

13

14   BEFORE:        THE HONORABLE DAVID ALAN EZRA
                    Chief United States District Judge
15
     REPORTED BY:   STEPHEN B. PLATT, RMR, CRR
16                  Official U.S. District Court Reporter

17   APPEARANCES:   CHRIS A. THOMAS, ESQ.
                    U.S. Attorney's Office
18                  300 Ala Moana Blvd., Suite 6100
                    Honolulu, Hawaii  96813
19
                             Attorney for the Government
20

21                  STEPHEN M. SHAW, ESQ.
                    P.O. Box 2353
22                  Honolulu, Hawaii  96804

23                           Attorney for the Defendant

24

25
```


EXHIBIT C.3

2

```
 1   MONDAY, AUGUST 23, 2004                              9:20 A.M.
 2                          -ooOoo-
 3              THE CLERK:  Criminal 03-495DAE, United States of
 4   America versus defendant seven, Corey Manley.  This case is
 5   called for defendant's motion to sever charges and defendants;
 6   defendant's motion to suppress evidence; and defendant's
 7   motion to dismiss indictment due to insufficiency of evidence.
 8              MR. THOMAS:  Good morning, Your Honor.
 9              Chris Thomas for the United States along with
10   Special Agent Dan Kelly of the FBI.
11              THE COURT:  Good morning.
12              MR. SHAW:  Good morning, Your Honor.
13              Stephen Shaw on behalf of Corey Manley.
14              Your Honor, I apologize for the delay.  I didn't
15   have this calendered, and I checked three calendars, and I'm
16   not sure why that happened, and I don't recall what happened
17   at the last hearing.
18              I would ask the court to waive my client's presence
19   on the suppression motion because I understand from counsel
20   there's not going to be any statements that are going to be
21   held against my client.  So, based upon that assertion, I
22   would withdraw my motion to suppress.
23              THE COURT:  Oh, so you are withdrawing your motion
24   to suppress?
25              MR. SHAW:  Yes, Your Honor, based on representations
```


EXHIBIT C-4

```
                                                                    3
 1   of counsel.
 2              THE COURT:  Do you want to state that on the record,
 3   whatever it is?
 4              MR. THOMAS:  Yes, Your Honor.
 5              I had a discussion with Mr. Shaw this morning, that
 6   his client, upon his arrest, gave a statement, but it wasn't
 7   very long, and it wasn't incriminating in any way.  The
 8   government wasn't intending to offer it as evidence at his
 9   trial, except in the event of rebuttal, should Mr. Manley
10   testify.
11              THE COURT:  Okay, well, let me just say something
12   here for the record:
13              We're a fairly busy court, and that means that,
14   between myself and my law clerks, it takes a considerable
15   amount of time to work these matters up.  Now, I would have
16   appreciated it -- and, quite frankly, I think my law clerk
17   would have appreciated it -- if we would have known this ahead
18   of time, because my law clerk put a considerable amount of
19   effort into this, and I, of course, have to review the
20   underlying papers and go over her bench memo.
21              So, the next time, counsel, when it is clear that
22   there is essentially no motion, if this could have been
23   communicated immediately -- when was this motion first filed.
24              MR. THOMAS:  Well, Your Honor, let me clarify, as
25   well:  In his motion, Mr. Shaw stated a suppression of items
```


EXHIBIT C.5

1   and statements.  And in his motion --

2          THE COURT:  Well, I know, but what I'm saying here

3   is, don't you think it would be well worthwhile -- I

4   understand his motion was vague.  So what -- I'm not just

5   chastising you, I'm chastising Mr. Shaw; both of you.  You

6   need to talk, and you need to figure out what it is that

7   you're talking about, because now it turns out that this is a

8   non-issue, and it should have been clear to both counsel that

9   it was a non-issue way back when it was first filed.

10         Now, Mr. Shaw should have filed a much more

11  particular motion.  You should have communicated with him when

12  he did, and -- didn't do that, and it should have been

13  clarified.

14         Is there something wrong with lawyers talking to

15  each other?  When I used to practice law, I used to talk to

16  opposing counsel.  When I would get a motion for summary

17  judgment -- I wasn't a criminal lawyer, but it's no different

18  in the civil -- if I looked at the motion and the motion was

19  vague, I would call the other lawyer up, and I would say, what

20  is this all about?  I mean, that's not an ex parte

21  communication; lawyers communicate with each other.

22         So I think that both of you bear an equal amount of

23  responsibility here.  I'm just telling you that if this would

24  have happened in a federal court in Los Angeles, or some other

25  places I know, you both would have been tagged with some very



EXHIBIT C-6